# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**DEREK ADAM WALKER**                                                    **PLAINTIFF**

**v.**                              **No. 3:16-CV-00049-JTR**

**NANCY A. BERRYHILL,[1]**
**Acting Commissioner,**
**Social Security Administration**                              **DEFENDANT**

## <u>ORDER AFFIRMING THE COMMISSIONER</u>

Derek Walker ("Walker") received social security disability benefits as a child. (R. at 162). On redetermination as an adult, he was found no longer disabled, and his benefits ceased in May 2011. (R. at 170). After a hearing, the administrative law judge ("ALJ") denied the continuation of benefits. (R. at 126). The Appeals Council remanded, and the ALJ again denied benefits. (R. at 133–34, 149). The Appeals Council again remanded. (R. at 158–60). At the third administrative hearing, the ALJ again denied benefits. (R. at 22). The Appeals Council denied Walker's request for review. (R. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Walker has requested judicial review.[2]

For the reasons stated below, the Court affirms the ALJ's decision.

---

[1] Berryhill is now the Acting Commissioner of Social Security and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## I.      The Commissioner's Decision

The ALJ found that Walker had the severe impairments of degenerative disk disease of the lumbar spine, attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder, mood disorder, learning disabilities in reading and writing, and obesity. (R. at 13). Based on these impairments, the ALJ concluded that Walker had the residual functional capacity ("RFC") to perform medium work, as long as it was further limited to simple, routine work where reading and writing is not required, work tasks are provided with demonstrations, and contact is only occasionally required with supervisors, coworkers, and the general public. (R. at 15). Because Walker had no past relevant work, the ALJ took testimony from a vocational expert ("VE"), who testified that Walker could perform jobs such as night janitor or dishwasher. (R. at 20-21). After considering the entire record, the ALJ held that Walker was not disabled. (R. at 22).

## II.    Discussion

Walker argues that the Commissioner's decision must be reversed because the ALJ: (1) did not sufficiently consider Walker's obesity; (2) failed to find Walker's knee pain to be a severe impairment; (3) erred in determining Walker's RFC; and (4) failed to ask a proper hypothetical question to the VE.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether

it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

## A.   The ALJ Properly Considered Walker's Obesity

According to Walker, the ALJ failed to fully consider his obesity in denying benefits. To the contrary, the ALJ: (1) found that Walker's obesity was a "severe" impairment (R. at 13); (2) noted that he was six feet, one inch, weighed 289 pounds, and had a BMI of 38.12, which is classified as "class 2 obesity" (R. at 16, 18); (3) stated that she considered the impact of Walker's obesity on his other impairments (R. at 18); and (4) stated that she had considered the effect of his obesity on his ability to sustain activity on a regular and continuing basis (R. at 18). The ALJ expressly stated that she was evaluating Walker's obesity in compliance with the governing ruling, SSR 02-1p, which requires the consideration of a claimant's

obesity at all steps of the sequential evaluation, alone and in combination with other impairments. (R. at 18).  *See* SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).

The medical records contain no notation of additional limitations related to Walker's obesity. Furthermore, although Walker alleges that his obesity "might contribute to or exacerbate" his knee and back problems, he has not explained how further consideration of his obesity would have changed the ALJ's RFC determination or any other aspect of her analysis. *See Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008). Because the ALJ properly considered and evaluated Walker's obesity in deciding that he was not disabled, the Court concludes that Walker's first argument is without merit.

**B.   The ALJ Properly Considered Walker's Knee Pain**

Walker next argues that the ALJ erred in failing to find his knee pain to be a severe impairment.

The claimant has the burden of proving that an impairment is "severe." By definition, a "severe impairment" must "significantly limit" a claimant's physical or mental ability to do basic work activities. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007); *see* 20 C.F.R. § 416.921(a). An impairment is not "severe" if it would have "no more than a minimal effect" on the claimant's ability to work. *Kirby*, 500 F.3d at 707.

4

Here, the record shows conservative treatment of Walker's reported knee pain. (R. at 706). He also exhibited normal range of motion without pain in both legs. (R. at 869). X-rays of his knee "look[ed] ok," showing "good alignment," no fractures or dislocation, and "no acute process." (R. at 706-07). Thus, substantial evidence supports the ALJ's conclusion that Walker's knee pain was not a severe impairment.

In addition, while the ALJ found Walker's knee pain to be "non-severe," she stated that, in assessing RFC, she considered "all of [his] impairments, including impairments that are not severe," as required by the regulations. (R. at 12-13); *see* 20 C.F.R. § 416.945(a)(2). The ALJ specifically discussed Walker's reports of knee pain and the relevant medical evidence. (R. at 16-17). Thus, the Court concludes that the ALJ sufficiently considered his knee pain.

### C.  The ALJ Did Not Err in Her RFC Determination

Walker contends that substantial evidence does not support the ALJ's RFC determination. First, he argues that, in determining that Walker could perform the physical requirements for medium work, the ALJ did not sufficiently consider his obesity and knee pain. For the reasons discussed above, this argument fails.

Regarding Walker's reported back pain, the record contains no evidence of treatment or objective findings prior to May 2014. (R. at 17). At that time, imaging showed only "mild loss of posterior disc height at L5-S1." (R. at 820). On March

5

12, 2015, Walker told his primary care physician, Dr. Alexander Baltz, that he had completed physical therapy, his back pain was manageable, and he was looking for a job. Dr. Baltz "clear[ed] him to return to work." (R. at 920-22). Finally, Walker testified at the administrative hearing that he had worked several jobs between October 2014 and September 2015, some of which required him to lift up to 100 pounds at a time. (R. at 41-42). Thus, substantial evidence supports the ALJ's physical RFC determination.

Walker also argues that the ALJ erred in giving great weight to the opinions of two consultative psychologists who opined that he had only mild limitations in his mental ability to perform work-related tasks. Specifically, those consultative psychologists noted that Walker could communicate in a socially adequate manner, could sustain concentration and persistence, and was mildly limited in his ability to understand and carry out complex instructions and make complex work-related decisions, and to interact appropriately with the public. (R. at 584–89, 733–34, 738–39). While Walker insists that these reports contradict the record, it is not enough to show that substantial evidence would have supported a conclusion different from the one reached by the ALJ. *Reed*, 399 F.3d at 920.

The record as a whole contains substantial evidence supporting the ALJ's mental RFC determination, *i.e.*, Walker can perform simple, routine work where reading and writing are not required, where work tasks are provided with

6

demonstrations, and where he has only occasional contact with supervisors, coworkers, and the general public.

Walker has an irregular history of mental health treatment during the relevant time period. (R. at 16-20). On March 5, 2011, Suzanne Gibbard, Ph.D., performed a consultative evaluation and diagnosed him with attention deficit disorder, mathematics disorder, reading disorder, and disorder of written expression. (R. at 588). On March 30, 2011, due to an assault charge, he started court-ordered therapy for anger management at Families, Inc. (R. at 611-49, 771-76). On May 18, 2011, he was diagnosed with oppositional defiant disorder, mood disorder, developmental coordination disorder, and amphetamine and psycho-stimulant dependence. (R. at 630-32). On August 25, 2011, he was discharged from treatment, and his counselor noted that Walker no longer required that level of care. (R. at 772).

At some point, Walker was prescribed anti-anxiety medication. On January 12, 2012, Walker told his primary care physican, Dr. Baltz, he was still having anxiety and "rapid mood swings," but he "adamantly refuse[d]" to seek mental health treatment or take any other medications. (R. at 705-06). In March 2012, some of Walker's family-members saw Dr. Baltz to talk about Walker's anger and anxiety issues. (R. at 703).

On January 31, 2013, Kenneth Hobby, Ph.D., performed a consultative mental diagnostic evaluation. Walker told Dr. Hobby that he was not taking any medications

or receiving any therapy for emotional or psychiatric problems because they "didn't help." (R. at 726). Dr. Hobby noted that Walker's emotional control was "good with normal variability with no marked shifts." (R. at 729). Dr. Hobby diagnosed a learning disorder, and alcohol abuse in partial remission. (R. at 732).

On March 25, 2013, Walker told Dr. Baltz he would like to "restart" medication for his "nerves," because he was having trouble concentrating. Dr. Baltz prescribed Adderall and anti-anxiety medication. (R. at 765-66). In May 2013, Walker reported that he was tolerating his medication well, with continued improvement in his ADHD, but that his anti-anxiety medication was not effective. Dr. Baltz prescribed a new medication. (R. at 760-61).

On February 17, 2014, Walker told Dr. Baltz he had been doing well on Adderall but had not filled his prescriptions because he had lost his insurance. Dr. Baltz prescribed Adderall again and recommended therapy at Families, Inc. (R. at 779-80).  In March and April 2014, Walker attended four therapy sessions. He was diagnosed with ADHD, generalized anxiety disorder, and cognitive, communication and developmental coordination disorders. (R. at 784-94).

On June 3, 2014, Walker told Dr. Baltz that his ADHD medication "seems to work very well," but he was still having anxiety. (R. at 817-18.)

In September 2014, following a domestic violence incident, Walker began court-ordered therapy at Families, Inc. (R. at 881, 886). He regularly attended

8

individual and family therapy sessions through November 2014. (R. at 937-52). On November 7, 2014, he told his counselor he had begun working at a local manufacturing plant and was getting along well with his boss. (R. at 940-41). On November 25, 2014, he was "doing well" on his medications with "no symptoms," and he was told to return in three months. (R. at 937-39).

Between January 2015 and October 2015, Walker periodically returned to Families, Inc. for follow-up therapy sessions. At those visits, he reported that, although he experienced financial stresses and was "easily agitated," he was controlling his anger and "doing well." (R. at 925-36, 954-60, 970-86). On July 2, 2015, he was working at a new job, his anger was "better," and his medication were "helping." (R. at 959-60). On August 7, 2015, he reported that he had changed jobs but had maintained employment during the past thirty days. (R. at 985-86). On September 3, 2015, he was "taking more responsibility at his job by being the foreman supervising one person." (R. at 978). On October 15, 2015, Walker's counselor observed that Walker was "talkative and rather engaging," and in "good spirits, laughing and smiling." Walker reported that he was continuing to work, enjoyed his job, and was "doing better" in controlling his attitude and anger. (R. at 970-71).

Walker points to incidents that demonstrate his lack of psychological stability, such as an August 9, 2014 altercation with another patient at a physician's office.

(R. at 841). However, the next month he began therapy sessions because of "anger outbursts and aggression that [had] led to legal problems." (R. at 886.) By November, he was doing well on his medication and was experiencing "no symptoms." (R. at 937).

Walker also argues that the ALJ gave too little weight to a September 3, 2015 letter from his therapist, who opined that Walker's "mood vacillation" severely impaired his ability to work. (R. at 967). While correctly observing that the therapist was not an "acceptable medical source" under 20 C.F.R § 416.913, the ALJ nevertheless stated that she had "carefully considered" the opinion but found it to be inconsistent with the evidence of record as a whole. (R. at 20).[3]

According to the record, the therapist's September 3, 2015 opinion is inconsistent with his treatment notes from the same time period. Those notes show that, although Walker continued to struggle with self-control and appropriate behaviors, his symptoms had "improved in recent months" his medication regimen was "working good," he was maintaining steady employment, and he was practicing coping strategies for managing his anger and frustrations. (R. at 976, 978, 982, 986). Thus, the ALJ did not err in discounting the therapist's opinion.

---

[3] *See Lacroix v. Barnhart*, 465 F.3d 881, 885-87 (8th Cir. 2006) (while ALJ is entitled to afford lesser weight to an opinion that is not from an "acceptable medical source," ALJ must consider such evidence as it relates to an impairment's severity and effect on the claimant's ability to work).

If a mental impairment can be controlled by treatment or medication, it cannot be considered disabling. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). Nonetheless, the Eighth Circuit has recognized that, because individuals with mental illness may experience periods during which they are relatively "symptom-free," such a remission does not necessarily mean that the disability has ceased. *Id.* at 392. Thus, in evaluating mental impairments, an ALJ must consider "all relevant evidence to obtain a longitudinal picture of [a claimant's] overall degree of functional limitation." 20 C.F.R. § 416.920a(c)(1).

Here, in evaluating Walker's mental impairments, the ALJ considered evidence from January 2011 through September 2015, including: (1) written statements and hearing testimony from Walker, his relatives and friends; (2) medical evidence from his primary care providers and treating mental health providers; (3) Global Assessment of Functioning (GAF) scores assigned by various providers; (4) observations and opinions from two consultative psychologists; and (5) the opinions from state agency reviewing psychologists. (R. at 13-20).

The most compelling evidence supporting the ALJ's decision, however, is Walker's recent work history. At the September 2015 administrative hearing, he testified to working several jobs in the past year, and he was working full-time for a tree service at the time of the hearing. (R. at 38-44). As discussed, he also reported

to his therapist that he had maintained steady employment from July 2015 through October 2015. (R. at 971).

Finally, the ALJ identified several mental impairments as "severe," noted in her decision that Walker's "mental issues" were his "most severe impairments," and expressly accounted for some degree of mental limitation by including significant restrictions in her RFC assessment. (R. at 13, 15, 19). Walker has not established that the evidence requires further restrictions.

Accordingly, the Court concludes that substantial evidence in the record as a whole supports the ALJ's physical and mental RFC determinations.

### D.   The ALJ's Hypothetical Question to the VE Was Proper

Walker contends that the ALJ posed an insufficient hypothetical question to the VE. "A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996). The ALJ only needs to capture the concrete consequences of the impairments, rather than using specific terminology. *Lacroix*, 465 F.3d at 889. Walker argues that the ALJ should have included his obesity in the hypothetical question. However, the ALJ's hypothetical questions contained all the limitations described in the RFC, which sufficiently captured the concrete consequences of Walker's impairments. (R. at 64–65). Accordingly, the Court concludes that this argument lacks merit.

## III.    Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court further concludes that the ALJ's decision is not based on legal error.

It is so ordered this 14th day of  February, 2017.

_____
UNITED STATES MAGISTRATE JUDGE